DANIEL KINTNER *v.* JAMES BLAIR, CHARLES KELSEY, and
others.

A., being indebted to B., in $268, gave to B., on the 1st of April, 1844, a deed in fee
for certain land; and, on the same day, B. gave to A. a writing, as follows: "This
may certify to A., that I agree to give him a deed for the lands he deeded to me
this day, providing the said A. pays me $268 on the 1st of April, 1845, with interest
from the 1st of April, 1844; and also he, the said A., to pay me all other claims I
may have against him at that time in any manner or shape." A. failed to pay on
the 1st of April, 1845; and took a lease from B. of the lands for one year, com-
mencing that day; and, at or near the expiration of that year, took another lease of
the lands for another year. In November, 1846, the Sheriff, by virtue of judgments
against A., sold all his right in the said lands, and C. became the purchaser there
of. A. remained in possession of the lands from the time of the giving of the said
deed and certificate.

On a bill by C. against B. to redeem, it was held, that the said deed and certificate
constituted a mortgage; and that C. was entitled to redeem.

The bill, filed March 17, 1847, states, that Isaac M. Wil-
drick, being seized in fee of the lands in the bill mentioned, and
being indebted to George Wildrick in $616, executed to the
said George a mortgage of the said lands to secure the payment
of the said sum.  That while said Isaac remained entitled to the
equity of redemption in said lands, the complainant, at the re-
quest of said Isaac, became jointly bound with, and as security
for the said Isaac, in a note for $124,65, dated February 11,
1845, payable to one Savercool, one day after date; and also
in another note, for $44,55, dated June 14, 1844, payable to one
Reed; and that said Isaac then was, and still is indebted to the
complainant in the sum of $50, for goods sold, &c.; and in the
further sum of $31,99 on a note given by the said Isaac to one
Robert D. Stine, or bearer, dated March 11, 1846, now held by
the complainant.

That the said Isaac, being indebted to James Blair in $100,
and to Charles Kelsey in $168, who were pressing said Isaac
for payment, the said Isaac proposed to give them a mortgage
on the said lands to secure the same; but that the said James

and Charles proposed to the said Isaac that he should give them a deed for the lands, and that they should allow him a certain time to pay their debts, and give him a written agreement securing to him the right of redemption on the payment of their said debts. That the said Isaac acceded to their said proposition, and executed to the said James and Charles a deed, in fee simple, for the said lands, dated April 1, 1844, for the consideration therein expressed of $268 ; and that the said James and Charles thereupon executed and delivered to the said Isaac a writing to the effect following : " This may certify to Isaac M. Wildrick, that we agree to give him a deed for the lands he deeded to us this day, providing the said Wildrick pays us $268 on the 1st of April, 1845, with interest from the 1st of April, 1844 ; and also he, the said Wildrick, to pay us all other claims we may. have against him at that time in any manner or shape. Dated the first day of April, 1844.

("Signed)          JAMES BLAIR,
                   "CHARLES KELSEY."

That the said James and Charles, or one of them, afterwards obtained a judgment and execution, before a Justice of the Peace, and levied upon and sold the personal property of the said Isaac, to pay the interest of the money mentioned in the said deed as the consideration thereof, and also for the payment of the interest due said George Wildrick on his said mortgage.

That, on the 16th April, 1845, the said Charles Kelsey took a note from the said Isaac for the payment of one year's interest on the bond secured by the mortgage to the said George Wildrick, and gave a receipt to the said Isaac for the said note, to the following effect : " Received, 16th April, 1845, from Isaac M. Wildrick, his note at six months after date, with interest, for $37,56, and it is understood that if the said Isaac M. Wildrick shall pay to George Wildrick the said sum of $37,56, being the interest on a bond for one year, which the said George holds against the said Isaac, within the said six months, so that I am released from the payment of the same, then the said note the said Isaac is not to pay; and if he does not pay the said George, then the said note to remain in force and virtue.

("Signed)          CHARLES KELSEY."

That the said James and Charles afterwards leased the said property to the said Isaac, for one year, for the amount of the interest of the consideration money mentioned in the said deed to them, and the interest due said George Wildrick on his said mortgage.

That the said Savercool became dissatisfied, and was about to prosecute the said Isaac and this complainant on the note so given to him as aforesaid; and, to prevent costs, the said Isaac and this complainant gave to the said Savercool a bond with a warrant of Attorney to confess judgment, in the penal sum of $211,04, dated June 11, 1846; upon which the said Savercool obtained judgment, as of June term, 1846; and execution thereon was issued and delivered to the Sheriff of Warren.

That, on the 10th June, 1846, John I. Blair obtained a judgment against the said Isaac, on a bond with a warrant of Attorney, in the penal sum of $290, the payment of which was also secured to the said John I. Blair by a mortgage from the said Isaac on the same lands; upon which judgment and execution was issued and delivered to the Sheriff of Warren.

That, under these two executions, the said Sheriff levied, among other things, on all the said lands, as the property of the said Isaac; and the said lands were advertised to be sold, and were sold, by the said Sheriff under the said executions, on the 28th of November, 1846, at public sale; and this complainant became the purchaser thereof at the said sale, for the price and consideration of $4,75, and received the Sheriff's deed therefor, and thereby became entitled to the equity of redemption of and in the said lands.

That, afterwards, on the 9th February, 1848, the complainant called on the said James and Charles, and proposed to pay their demands against the said Isaac M. Wildrick, for the purpose of redeeming the said lands, on their releasing or conveying the said lands to this complainant, and, at the same time, requested them to state how much was due between them for principal and interest; that the said James and Charles declined to comply with such request of the complainant; and thereupon this complainant tendered to each of them the sum which he supposed

to be due them, respectively, offering, at the same time, to pay any further sum if they would make it appear that the sum he offered was not sufficient, which he avers it was; but that they refused to accept the same and convey their right in said lands to the complainant.

The bill prays on account; and that, on the complainant's paying to the said James and Charles what may be found to be due to them from the said Isaac M. Wildrick, they may be decreed to convey to the complainant all their right in the said lands; or, that the said lands may be decreed to be sold to pay the incumbrances, &c.

James Blair and Charles Kelsey put in their joint and several answer.

They deny that they, or either of them, ever proposed to the said Isaac M. Wildrick that he should give them a deed for the said lands, for the sum he owed them, upon the understanding that the said Isaac should have the right to pay the amount of the debt within a limited time, and that these defendants would execute a written agreement by which the right of redemption would be secured to the said Isaac.

They say that the said Isaac proposed to these defendants to sell the lands to them, subject to the incumbrances then upon it, for $268, and that these defendants should take out of the purchase money the respective sums (before stated) which the said Isaac owed them, and that they should pay him the balance in cash, and that he, the said Isaac, would thereupon execute to these defendants a good and sufficient deed for the lands. That these defendants then agreed with the said Isaac for the absolute purchase of the said lands, for $268, to be paid to the said Isaac in cash, after deducting the sums he owed these defendants, respectively, subject to the incumbrances then upon the lands. That the said James, accordingly, drew the said deed from the said Isaac to these defendants for the consideration of $268.

That these defendants, before the delivery of the said deed to them, delivered up to the said Isaac the notes they, respectively, held against him, amounting to $190, and paid to the said

Isaac the balance, being $78, in cash. That the said Isaac took the said notes and cash, and delivered the said deed to these defendants, duly acknowledged; which deed was intended, and was so expressed by the said Isaac, to convey to these defendants an absolute estate in fee of all the right, title and interest of the said Isaac of in and to the said lands.

They deny that said conveyance was ever intended as a mortgage; but was perfectly understood between these defendants and the said Isaac to be an absolute conveyance, without any condition or defeazance connected therewith. They say, that the price they paid said Isaac for the said land was a full and fair price and valuable consideration for the same, together with the said incumbrances (they are before stated and admitted in the answer) then upon it.

They admit that, after the purchase of the said property had been completed, and after the said deed had been delivered by the said Isaac to these defendants, to wit, on the 1st of April, 1844, the said Isaac, as he was about to leave the store of the said James, remarked: Perhaps I may be able to buy back this land of you next spring, or I may perhaps be able to sell for a little more by that time, and probably you would be willing to sell the land to me at that time, if I can buy it back. That said James answered, that he would be entirely willing to sell the land to him again. And the said Isaac then proposed that he should give an agreement to that effect; which the said Charles opposed; but the said James said: Certainly, I am willing to sell you the land again, and will give you a certificate to that effect. That said James, accordingly, drew up a certificate to the effect set forth in the bill, and it was signed by these defendants; which certificate was only intended as an agreement for the re-purchase of the property by the said Isaac on the said 1st of April, 1845, and was so understood by the said Isaac.

They further say, that the said Isaac on the said 1st of April, 1845, came to these defendants and informed them that he was not able to purchase the property of them again, as he thought he would be, and must therefore give them up possession of the premises; and that the said Isaac, accordingly, delivered up to

31

these defendants peaceable possession of the said lands, on the said 1st of April, 1845; and these defendants took peaceable possession of the same, and have so continued possessed of the same in their own right to this time. That the said Isaac, at the same time, was desirous to rent the property of these defendants; and, as it was inconvenient for either of them to occupy said premises, they were willing to rent the same to the said Isaac. And, on the said 1st of April, 1845, the said Charles and the said Isaac entered into an indenture of lease, in which the said Charles, on the part of these defendants, covenanted and agreed to rent the said lands to the said Isaac for one year from the said 1st of April, 1845; and the said Isaac covenanted and agreed, on his part, to pay therefor, on the 1st of April, 1846, the rent of $50; and did also agree to farm said lands in a proper manner; and to cut no green timber for his firewood; and that he would deliver up quiet and peaceable possession of said lands, at the expiration of the said year, to the said Charles. That, on the 23d of January, 1846, the said Isaac entered into a further agreement with the said Charles for the rent of said lands from April 1, 1846, to April 1, 1847, the said Isaac covenanting, on his part, to pay therefor the rent of $70; that he would cut no green wood for firewood as long as there was dotted and old timber; that he would pay all the land taxes; and that, at the expiration of the said term, he would deliver up peaceable possession of said lands to the said Charles. And that, by a like indenture, made between the said Isaac and the said Charles, on the 25th December, 1846, the said Charles leased the said lands to the said Isaac for another year, ending April 1, 1848, the said Isaac covenanting to pay therefor the rent of $45, to cultivate said farm in a proper manner, and to cut no green wood, (as before) and to deliver up peaceable possession of the farm on the said 1st day of April, 1848.

They say, that, from April 1, 1845, when they received possession of said lands from the said Isaac, to the present time, they have been in quiet and peaceable possession of the said lands; and during all that time the said Isaac was, and still continues to be, the tenant of these defendants as aforesaid. That, after

the said Isaac had given up the possession of the said lands to these defendants, they had a conversation with the said Isaac on the subject of the sale of said lands and the certificate. And that the said Charles asked the said Isaac where the said certificate was ; and that said Isaac answered that he had mislaid it, as it was of no use to him he had taken no care of it ; that he would give it up to the said Charles whenever he could find it, if he should be able to find it at all.

That, in a further conversation with the said Isaac, the said Charles told him he understood that he, the said Isaac, had found fault with these defendants, and had said that they had shaved him in the purchase of said property, and had not paid him what they agreed, and that these defendants had told him it was a mortgage in place of a deed. And that the said Isaac denied that he had ever used such language or anything like it ; and stated, that the agreement between him and these defendants was a fair one ; that these defendants had paid him for the property all they had agreed to, and that they had paid him the full worth of the land, including the incumbrances, and that he, the said Isaac, at the time of the sale, considered that he made to these defendants a fair and *bona fide* deed for the said lands.

They admit that the said Charles sued the said Isaac, before a Justice of the Peace, upon the lease made between the said Isaac and the said Charles, for the rent of the premises, and obtained judgment for the amount of the rent specified in the said lease first made ; and that, on an execution issued on that judgment, the personal property of the said Isaac was levied on to pay the rent due these defendants on the said lease. But they deny that they, or either of them, ever prosecuted and obtained a judgment against the said Isaac and levied on his personal property to pay the interest on the consideration money mentioned in said deed and the interest on the mortgage of the said George Wildrick.

They admit that the said Charles, on the 16th of April, 1845, took a note from said Isaac, at six months, for $37.36, and gave him the receipt mentioned in the bill. That, said Isaac having failed to repurchase the property on the 1st of April, 1845, and

having given up the possession of the premises to these defendants as before stated, the said Charles told the said Isaac that he ought to pay some rent for the year previous; that these defendants were liable to pay the interest on the George Wildrick mortgage, and that he had the use of the premises the year previous, and therefore should pay these defendants a reasonable rent for the same. And they say that the said Isaac agreed to pay a reasonable rent for the premises during the year 1844, which they fixed at said sum of $37.36, and for which sum the said Isaac made his note aforesaid to the said Charles. That, after said note was made, the said Isaac said it would suit him better if the said Charles would allow him to pay the interest on the George Wildrick mortgage to the said George himself; that he could get along much better with his uncle. The defendant Charles told said Isaac it was a matter of indifference to these defendants; that they were bound to pay the George Wildrick mortgage; that it would suit them quite as well if the said Isaac paid that amount of interest on that mortgage as if he paid the money directly to these defendants. That said Charles, accordingly gave said Isaac the receipt mentioned in the bill. And they say, that the said Isaac never paid that amount of interest on George Wildrick's mortgage.

They deny that they ever intended by the said arrangement to construe their deed into a mortgage; and deny that they rented the said property to the said Isaac for one year to pay the interest on the consideration money in the deed from the said Isaac to them and the interest money on the mortgage to the said George Wildrick, or that they rented the premises to the said Isaac in any other way than they have hereinbefore set forth, or that they ever claimed the consideration money in their deed, either principal or interest, from the said Isaac.

Testimony was taken on both sides.

*P. B. Kennedy* and *P. D. Vroom* for the complainant. They cited 2 *Amer. Eq. Dig.* 258; *Plac.* 1, 2, 3, 5, 6, 9, 14, 19, 20, 25, 26; 2 *Cowen,* 246; 6 *John. Ch.* 324, 417; 2 *Ib.* 189; 15

*John. Rep.* 555; 1 *Green's Ch.* 264; *Saxton's Ch.* 534; 7 *John. Ch.* 42; *Pow. on Mortg.* 381, 2, 343, 4, 5; 1 *Ch. Cas.* 59; 1 *Vern.* 193; 1 *Sandford's Ch. Rep.* 56.

*J. G. Shipman* and *W. Halsted* for the defendants. They cited 2 *Edw. Ch.* 138; 2 *Ball & Beatty,* 274; 7 *Cranch,* 237; 3 *Green's Ch.* 307; *Saxt. Ch.* 301; 4 *John. Rep.* 42; 7 *Ib.* 282; 5 *Halst. Rep.* 193; 4 *Ired. Eq. Rep.* 413; 2 *Green's Ch.* 1; 3 *McLean's Rep.* 41; 1 *U. S. Dig. Estoppel,* 654; *Rev. Stat.* 503, sec. 10; 4 *John. Rep.* 82; 19 *Wend. Rep.* 518; 4 *Denio's Rep.* 493, 4; *Prec. in Ch.* 275; 1 *Paige,* 20; 2 *John. Ch.* 238; 1 *Ball & Beatty,* 181.

THE CHANCELLOR. The question is, what was the character and effect of the transaction between Isaac M. Wildrick and the defendants at the time when these writings were made and delivered, as evidenced by the writings and the facts in evidence. The complainant claims that it was a case of a deed, absolute on its force, and a defeazance, constituting the transaction a mortgage. The defendants contend, that it was an absolute sale by Isaac M. Wildrick and purchase by them; and that the certificate, as it is called, was merely an independent agreement by the defendants to sell the lands to the said Isaac on his paying to them, at the expiration of one year, the consideration money paid by them for the deed, with interest, and such other claims as they might then have against him. I think the writings constituted a mortgage at the time when they were made and delivered. And that such was the intention of the parties seems clear, from the inadequacy of the consideration, shown in evidence, and the fact that Wildrick remained in possession without any lease, or agreement for the payment of rent, until after the time for payment had expired, and from other facts in evidence. Such being the effect of the writings, and the intention of the parties at the time they were made, the nature of the transaction was not changed by the subsequent leases given by Wildrick. It may be that he, and perhaps the defendants also, supposed that when the time for payment expired the agreement of the defendants to

reconvey was no longer of any effect. He, and perhaps they, may not have understood, that writings of this nature, originally constituting a mortgage, remain a mortgage though default be made in payment at the time fixed.

Decree for complainant.